IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CATHERINE LYNN MARSTON,    Petitioner, | § § § | |
| V. | § § | A-10-CA-304-SS |
| RICK THALER, Director, Texas Dept. of Criminal Justice- Correctional Institutions Division,    Respondent. | § § § § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE SAM SPARKS
 UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Motion to Dismiss as Time-Barred (Document 11); Petitioner's response thereto (Document 13); and Petitioner's "2nd Motion for In Forma Pauperis Status" and "Motion for Habeas Bond" (Document 12). Petitioner, proceeding pro se, has paid the appropriate filing fee. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied in part and dismissed in part. In light of the Court's recommendation Petitioner's request for in forma pauperis status and habeas bond should be denied.

## I.  STATEMENT OF THE CASE

A.  **Petitioner's Criminal History**

According to Respondent, the Director has custody of her pursuant to a judgment and sentence of the 331st Judicial District Court of Travis County, Texas.  Petitioner was convicted of burglary of a habitation and violation of a protective order and was sentenced to 10 years in prison on May 5, 2005.  Petitioner's convictions were affirmed on November 1, 2007.  Marston v. State, No. 11-05-00358-CR, 2007 WL 3197743 (Tex. App. – Eastland 2007, pet. ref'd).  The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on March 12, 2008.  Marston v. State, PD No. 0089-08.

Petitioner has also challenged her conviction in a state application for habeas corpus relief.  The Texas Court of Criminal Appeals dismissed the application as noncompliant on May 6, 2009.  Ex parte Marston, Appl. No. 71,901-01.

B.  **Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. Her arrests were illegal;

2. The protective order against her was illegal;

3. Her plea bargain on October 4, 2004, was coerced;

4. She was denied her right to appeal the coerced plea and protective order;

5. The police refused to arrest the citizen, who detained her, when she was the victim;

6. Her rights were violated because the victim of her crime was referred to as the "victim;"

7. She received ineffective assistance because the attorney, who represented her with regard to the protective order, was appointed to represent her with respect to the current holding convictions;

8. She received ineffective assistance of counsel at pre-trial and trial, which caused her to be convicted when she is innocent;

9. Her attorney refused to let her testify and refused to call witnesses to testify on her behalf;

10. The prosecutor was guilty of misconduct;

11. The trial court erred;

12. There is no evidence to support her convictions;

13. The charges on which she was indicted are legally impossible to prove;

14. The jury considered parole laws during their deliberations on punishment;

15. Her rights were violated when her trial counsel refused to withdraw, the judge did not dismiss him, and trial counsel's brother was appointed to represent her on appeal;

16. Her rights were violated when the trial judge reviewed her state writ of habeas corpus and made findings contrary to the evidence; and

17. The Texas Court of Criminal Appeals made findings on her state writ that were contrary to the evidence.

Petitioner requests that she be released on a personal recognizance bond.

**C.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> The record in this case shows that appellant and the complainant, Tom Labinski, dated and then lived together from June 2000 to November 2001. Labinski obtained a restraining order against appellant in July 2004, effective until July 2006. The restraining order forbade appellant from coming within 200 yards of Labinski's house, from calling him at home or work, and from contacting Labinski's family members.

Appellant telephoned Labinski's home several times during the early morning hours on October 13, 2004. She also called and left messages on his voicemail at work on December 7, 2004, and on December 8, 2004. In one voicemail, appellant stated that Labinski was going to jail for a long time. In another, appellant used a pseudo Spanish accent and called Labinski a liar and a batterer or murderer.

Appellant also went to Labinski's house on the afternoon of December 8, 2004. Labinski testified that he was home that afternoon and heard the doorbell ring. He did not see anybody at the door, but he saw a cab parked out front. The cab left. About thirty minutes later, the doorbell rang again. Again, Labinski saw a cab parked out front, so he went into his garage to get a better look but still could not see anyone out front. Labinski then heard scraping noises and saw a crowbar being used to pry open a screen. Labinski quickly pulled up the blinds and saw a dark slender man standing outside. The man jumped back startled and said, "[W]hoa, somebody is in there." Then Labinski looked over and saw appellant standing to the man's left. Appellant turned and ran, and the man followed her. They got into the cab and sped off. Labinski called 911 and took a picture of the cab leaving. A dark green pickup pulled up right after the cab left, and somebody rang the doorbell again. Labinski testified that he was "very frightened" during this incident.

A few days later, on the afternoon of December 13, 2004, Labinski's neighbor, Ruth Godine, noticed two Pop-A-Lock trucks parked at Labinski's house. Thinking this was strange because Labinski had been home earlier that day, Godine walked over to check on things. She saw appellant standing near the front door with a Pop-A-Lock employee and asked appellant if she was supposed to be there. Appellant said she was. Godine knew that appellant and Labinski had had problems, so Godine went around the corner to seek help from another neighbor, Jamie Baird. Baird and Labinski were friends and had been house mates. Godine also called 911.

Baird, who had a key to Labinski's house, ran across to Labinski's and went inside. Baird was aware of the protective order and knew that appellant was not supposed to be at Labinski's house. When he went inside, Baird noticed appellant's dog in the living room and eventually found appellant hiding in a closet. Baird ordered appellant to leave. She went into the living room, got her backpack, and headed outside. Baird testified that he knew about appellant's history of confrontations, so he waited until she was outside and then he caught up to her and "took her to the ground." Baird held appellant down until the police arrived.

When Officer Joseph M. Hernandez arrived at Labinski's residence, he saw Baird holding appellant down and trying to restrain her. Officer Hernandez placed appellant in handcuffs. He testified that appellant was irate and that some of her answers to simple questions made no sense. Appellant also gave a false name. Officer Hernandez found a box containing handcuffs in appellant's backpack, but the

4

> handcuff keys were not in the box. Because he was concerned that appellant had a key that she could use to unlock the handcuffs that had been placed on her, Officer Hernandez requested that a female officer frisk appellant. The handcuff keys were found in appellant's pocket.
>
> A Pop-A-Lock employee confirmed that he had been called to Labinski's residence and that he and another Pop-A-Lock employee were met there by appellant, who came walking up with a dog. Appellant showed them her driver's license, which indicated that she lived at that address. They opened the front door for her. One of the Pop-A-Lock employees testified that he drove a green pickup, that he had been called to that address on a previous day, and that a cab left as he was pulling up to the residence.

Marston v. State, No. 11-05-00358-CR, 2007 WL 3197743, at *2-3 (Tex. App. – Eastland 2007, pet. ref'd).

## II.   DISCUSSION AND ANALYSIS

**A.   Infirmities in State Habeas Proceedings**

To the extent Petitioner complains the Texas Court of Criminal Appeals and the state trial court did not adequately consider her state application for habeas corpus relief her claim fails. Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas corpus relief. Wheat v. Johnson, 238 F.3d 357, 361 (5th Cir. 2001); Vail v. Procunier, 747 F.2d 277 (5th Cir. 1984). Thus, Petitioner's claims challenging the alleged infirmities in her state habeas corpus proceedings should be denied.

**B.   Statute of Limitations**

Petitioner's remaining claims are time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. See 28 U.S.C. § 2244(d). That section provides, in relevant part:

>(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
>>(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final, at the latest, on June 10, 2008, at the conclusion of time during which she could have filed a petition for writ of certiorari with the United States Supreme Court. See SUP. CT. R. 13.1 ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Thus, absent any tolling, Petitioner had until June 10, 2009, to file an application for federal habeas relief.  Petitioner did not execute her federal application until May 3, 2010, after the limitations period had expired.

Petitioner's state application for habeas corpus relief was not properly filed and did not toll the limitations period.  An application for state post-conviction relief is "properly filed" for purposes of 28 U.S.C. § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable

[state] laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 364 (2000). See also Villegas v. Johnson, 184 F.3d 467, 470 (5th Cir. 1999) (state habeas application "properly filed" when it conforms with state's applicable procedural filing requirements such as those governing time and place of filing). Petitioner's state habeas corpus application did not constitute a "properly filed" application for purposes of 28 U.S.C. § 2244(d)(2), because the Texas Court of Criminal Appeals determined the application failed to comply with TEX. R. APP. P. 73.2. Edwards v. Dretke, 116 Fed. Appx. 470, 471 (5th Cir. 2004).

The record does not reflect that any unconstitutional state action impeded Petitioner from filing for federal habeas corpus relief prior to the end of the one-year limitations period. Furthermore, Petitioner has not shown that she did not know the factual predicate of her claims earlier. Finally, the claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review.

### III.  RECOMMENDATION

It is recommended that Respondent's Motion to Dismiss [#11] be granted, Petitioner's Second Request for In Forma Pauperis Status and Motion for Habeas Bond [#12] be denied, and Petitioner's application for writ of habeas corpus be denied in part and dismissed with prejudice in part as time-barred.

### IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective

December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the denial or dismissal of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. <u>Battles v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); <u>Douglass v. United Servs. Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of August, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE